**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**In re:** **CASE NO. 6:10-bk-11857-KSJ**

**SHILOH MISSIONARY BAPTIST CHURCH OF DAYTONA BEACH, INC.,** **CHAPTER 11**

**Debtor.**

---

# FIRST AMENDED DISCLOSURE STATEMENT, PURSUANT TO 11 U.S.C. §1125, FOR SHILOH MISSIONARY BAPTIST CHURCH OF DAYTONA BEACH, INC.

COUNSELS FOR DEBTOR

ROBERT J. MARA, ESQ.
MARA & MARA, P.A.
555 WEST GRANADA BLVD., SUITE B5
ORMOND BEACH, FLORIDA 32174

SHIMENE SHEPHARD-RYAN
LAW OFFICE OF SHIMENE SHEPARD-RYAN
3930 SOUTH NOVA ROAD, SUITE 304
PORT ORANGE, FLORIDA 32127

DECEMBER 7, 2010

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**In re:** **CASE NO. 6:10-bk-11857-KSJ**

**SHILOH MISSIONARY BAPTIST CHURCH OF DAYTONA BEACH, INC.,** **CHAPTER 11**

**Debtor.**

---

**FIRST AMENDED DISCLOSURE STATEMENT, PURSUANT TO 11 U.S.C. §1125, FOR SHILOH MISSIONARY BAPTIST CHURCH OF DAYTONA BEACH, INC.**

## I. INTRODUCTION AND SUMMARY

This Disclosure Statement (the "Disclosure Statement") is filed pursuant to the requirements of Section 1125 of Title 11 of the United States Code (the "Code"). This Disclosure Statement is intended to provide adequate information to enable holders of claims in the above-captioned bankruptcy case (the "Bankruptcy Case") to make informed judgments about the Plan of Reorganization (the "Plan") submitted by Shiloh Missionary Baptist Church of Daytona Beach, Inc. ("Shiloh" or "Debtor"). The overall purpose of the Plan is to restructure the Debtor's liabilities in a manner designed to maximize recoveries to all stakeholders. The Debtor believes the Plan is reasonably calculated to lead to the best possible outcome for all creditors in the shortest amount of time and preferable to all other alternatives.

**THIS DISCLOSURE STATEMENT AND ITS RELATED DOCUMENTS ARE THE ONLY DOCUMENTS AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES TO ACCEPT THE PLAN. THIS INTRODUCTION AND SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE REMAINING PORTIONS OF THIS DISCLOSURE STATEMENT AND THIS DISCLOSURE STATEMENT IN TURN IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN. THE PLAN**

**IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT AND ANY HOLDER OF ANY CLAIM OR INTEREST SHOULD READ AND CONSIDER THE PLAN CAREFULLY IN LIGHT OF THIS DISCLOSURE STATEMENT IN MAKING AN INFORMED JUDGMENT ABOUT THE PLAN. IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN CONTROLS. ALL CAPITALIZED TERMS USED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE DEFINITIONS ASCRIBED TO THEM IN THE PLAN UNLESS OTHERWISE DEFINED HEREIN.**

**NO REPRESENTATION CONCERNING THE DEBTOR IS AUTHORIZED OTHER THAN AS SET FORTH HEREIN. ANY REPRESENTATIONS OR INDUCEMENTS MADE, WHICH ARE OTHER THAN AS CONTAINED HEREIN, SHOULD NOT BE RELIED UPON IN ARRIVING AT A DECISION ABOUT THE PLAN.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO AUDIT. FOR THAT REASON, AS WELL AS THE COMPLEXITY OF THE DEBTOR'S BUSINESS AND FINANCIAL AFFAIRS, AND THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES, AND PROJECTIONS WITH COMPLETE ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT INACCURACY, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE. THIS DISCLOSURE STATEMENT INCLUDES FORWARD LOOKING STATEMENTS BASED LARGELY ON THE DEBTOR'S CURRENT EXPECTATIONS AND PROJECTIONS ABOUT FUTURE EVENTS AND FINANCIAL TRENDS AND ARE SUBJECT TO A NUMBER OF RISKS, UNCERTAINTIES AND ASSUMPTIONS.**

**AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, CAUSES OF ACTION, AND OTHER ACTIONS, THE DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.**

Shiloh is a debtor under Chapter 11 of the Code in a bankruptcy case pending in the United States Bankruptcy Court for the Middle District of Florida, Orlando Division (the "Bankruptcy Court").

As prescribed by the Code and the Rules, Claims asserted against, and Equity Interests in, the Debtor are placed into "classes". The Plan designates two (2) separate classes of Claims and Interests. The Plan contains two (2) classes of Secured Claims. The Plan contains zero (0) classes of Unsecured Claims, because the Debtor does not have any Unsecured Creditors. The classification of Claims and the treatment of each Class are discussed in detail below.

To the extent the legal, contractual, or equitable rights with respect to any Claim or Interest asserted against the Debtor are altered, modified, or changed by treatment proposed under the Plan, such Claim or Interest is considered "Impaired" and the holder of such Claim or Interest is entitled to vote in favor of or against the Plan. A Ballot for voting in favor of or against the Plan (the "Ballot") will be mailed along with the order approving this Disclosure Statement.

**THE VOTE OF EACH CREDITOR OR INTEREST HOLDER WITH AN IMPAIRED CLAIM OR INTEREST IS IMPORTANT. TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED AT THE ADDRESS AND BY THE DATE SET FORTH IN THE BALLOT.**

**VOTING DEADLINE**

The last day to vote to accept or reject the Plan is **January 19, 2011**. All votes must be received by the Clerk of the United States Bankruptcy Court for the Middle District of Florida, 135 West Central Boulevard, Suite 950, Orlando, Florida 32801 by 5:00 p.m. (EST) on that day.

Upon receipt, the Ballots will be tabulated and the results of the voting will be presented to the Bankruptcy Court for its consideration. As described in greater detail in Section IV of this Disclosure Statement, the Code prescribes certain requirements for confirmation of a plan. The Bankruptcy Court has scheduled a hearing (the "Confirmation Hearing") for January 26, 2011 at 11:00 a.m. to consider whether the Debtor has complied with those requirements.

The Code permits a court to confirm a plan even if all Impaired Classes have not voted in

favor of a plan. Confirmation of a plan over the objection of a Class is sometimes called "cramdown". As described in greater detail in Section IV of this Disclosure Statement, the Debtor has expressly reserved the right to seek "cramdown" in the event all Impaired Classes do not vote in favor of the Plan.

## II. DESCRIPTION OF DEBTOR'S BUSINESS

### A. In General.

Shiloh is a Florida non-profit corporation and Church incorporated in 1999 located in Daytona Beach, Florida. Aside from providing ministry services to the community, Shiloh provides food and other services to the homeless and less fortunate.

The income received by Shiloh is exclusively comprised of collections and donations received from its parishioners and other members of the community. In 2006 Shiloh added a new sanctuary, as the old sanctuary was in need of repair and its size was not amenable to the increased number of people attending services. In addition to the new sanctuary, Shiloh owns adjacent properties consisting of a small house used as a school, 3 parking lots, and the old sanctuary. The old sanctuary has suffered from flood damage, but can be repaired and used to rent to other groups affiliated with ministry work.

In order to finance the new sanctuary, Shiloh received financing from GoldStar as well as Wachovia Bank to build the new sanctuary.

### B. Events Leading to Chapter 11 Filing.

Beginning in 2007, the increasing unemployment rate in both Florida and the United States in general, along with the economic downturn in the overall economy, negatively affected the collections of Shiloh. The Debtor's collections revenue generated on a monthly basis decreased

sharply from approximately $20,000.00 per month in 2006 and 2007 to approximately $12,000.00 to $15,000.00 in 2009 and 2010.

Faced with the dramatic decrease in collections revenue, Shiloh took several steps to cut costs, including (i) eliminating the Pastor's allowance every month; (ii) cutting back on the number of lawn services from two to one; and (iii) cutting the number of part-time employees by eliminating paid positions such as the Finance Chairman, Church Clerk, Custodian, one musician position, and guest musicians. Beginning in October 2009, because of the financial hardship Shiloh was enduring for the past two years, Debtor began tendering late payments to GoldStar by making a 66-day late payment on October 20, 2009.

Despite the continuous efforts to cut costs, Debtor ultimately determined that the only alternative would be to seek local counsel to work with GoldStar and its attorneys, along with Wachovia Bank, to reorganize Shiloh under Chapter 11 of the Bankruptcy Code.

C. Events Subsequent to Chapter 11 Filing.

Debtor filed its Chapter 11 petition on July 6, 2010. The Debtor has been continuing to operate its business as debtor-in-possession under Sections 1101(a) and 1108 of the Code. Pursuant to various provisions of the Code, Shiloh has sought and obtained several orders from the Bankruptcy Court intended to facilitate the ongoing operations of the Debtor. Those orders authorized Shiloh to, among other things: (i) operate its business as debtor-in-possession; (ii) use cash collateral; and (iii) provide adequate protection payments to GoldStar.

## III. THE PLAN

**THE FOLLOWING SUMMARY IS INTENDED ONLY TO PROVIDE AN OVERVIEW OF THE DEBTOR'S PLAN. ANY PARTY IN INTEREST CONSIDERING A**

**VOTE ON THE PLAN SHOULD CAREFULLY READ THE PLAN IN ITS ENTIRETY BEFORE MAKING A DETERMINATION TO VOTE IN FAVOR OF OR AGAINST THE PLAN. THIS SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE PLAN.**

A. Overview.

In summary, the Plan contemplates emergence of a Reorganized Debtor through the continued operation of the business. All Claims against the Reorganized Debtor shall be classified and treated pursuant to the terms of the Plan. As noted more fully below, the Plan contains two (2) classes of Claims and Interests. There are two Classes of Secured Claims and no Classes of Unsecured Claims. Overall, the Plan provides that holders of Allowed Administrative Claims will be paid in full on the Effective Date.

B. Classification and Treatment of Claims.

1. Priority Claims.

a. Administrative Expense Claims.

Holders of all Administrative Expense Claims of the Debtor shall be paid in full on the Effective Date or in accordance with existing credit or repayment terms. Debtor's cash-on-hand, as of the Effective Date, shall be used to pay Allowed Administrative Expense Claims.

b. Tax Claims.

Except to the extent that the Holder and Reorganized Debtor have agreed or may agree to a different treatment, each Holder of an Allowed Priority Tax Claim shall receive from the Reorganized Debtor, in full satisfaction of such Claim, payments equal to the Allowed Amount of such Claim. Allowed Priority Tax Claims will be paid as of the Effective Date

of the Plan.

2. Secured Claims.

a. Class 1 - Happy State Bank d/b/a Goldstar Trust Company

The Class 1 Claim consists of the Secured Claim of Happy State Bank d/b/a GoldStar Trust Company ("GoldStar"), successor trustee by merger to American Church Trust Company, acting solely in its capacity as Trustee for bondholders of Debtor. The Class 1 Claim is impaired and the bondholders shall be allowed to vote to accept or reject the Plan as an Impaired Class. The Class 1 Claim is an Allowed Secured Claim and shall be paid in full as follows:

GoldStar's Claim, as of the date of the filing of the bankruptcy, was in the amount of $1,143,412.96. GoldStar's Claim valued as of the date of confirmation will be permitted by allowing GoldStar to retain its mortgage on the property located in Volusia County, Florida (the "Property"), said Property being more particularly described as follows: (1) PARCEL 1: Lots 5 and 6, Block 1, E.W. Green's 3rd Subdivision, according to the plat thereof recorded in Map Book 5, Page 35, Public Records of Volusia County, Florida; (2) PARCEL 2: Lot 7, Block 1, E.W. Green's 3rd Subdivision, according to the plat thereof recorded in Map Book 5, Page 35, Public Records of Volusia County, Florida; (3) PARCEL 3: Lot 2 Less the North 25 feet of the West 50 feet, and all of Lots 3, 4, 5, 6, 7, and 8, Block 2, Subdivision of Lot 1, Block 31, Hodgeman's Survey, according to the map or plat thereof as recorded in Plat Book 2, Page(s) 193, Public Records of Volusia County, Florida; (4) PARCEL 4: Lots One (1), Two (2) and the South 40 feet of Lot Three (3), Block Five (5), Conrad-Bullard's Subdivision of Lots 4 and 5, Block 27, Hodgeman's Daytona, according to the map or plat thereof as recorded in Plat Book 4, Page(s) 150, Public Records of Volusia County, Florida; and (5) PARCEL 5: Lots 8 and 9, Block 5, Conrad Bullards

Subdivision of Lots 4 and 5, Block 27, Hodgeman's Daytona, according to the map or plat thereof as recorded in Plat Book 4, Page(s) 150, Public Records of Volusia County, Florida. GoldStar's claim will be treated as fully secured under the Plan and is provided for in full in this Class 1 Claim.

GoldStar's claim, valued as of the Confirmation Date, will be amortized over sixty (60) months at 6% simple interest per annum and Debtor will make monthly payments in the amount of $5,700.00, with the balance due by a balloon payment on the sixty-first (61st) month after the Effective Date of the Plan. The initial monthly installments will begin on the first day of the full month after the Confirmation Order is executed, and each month thereafter with the balloon payment due on the 61st month after the Effective Date of the Plan to pay off the remaining balance of this Class 1 Claim. Credit will be given for all post petition adequate protection payments paid prior to the Effective Date of the Plan.

The bonds (Series 2006-A) currently outstanding to the Class 1 Claim's bondholders will be revalued and reclassified as Class A series bonds, but no formal certificates will be issued (as the original Series 2006-A bonds are book-entry certificates). This means that the values of such bonds are kept on the books of GoldStar, and therefore no formal bond certificates were ever issued. Accordingly, in the same way, the new Class A Series bonds under the plan will be book-entry bonds and formal bond certificates will not be issued. Rather, the original value of each original Series 2006-A bond will be replaced with a new claim value equal to the outstanding principal and accrued interest due to its holder as of the Confirmation Date, as calculated by GoldStar. However, to the extent that GoldStar, after payment of its fees and expenses allowed under the Trust Indenture (defined below), has monies remaining in the sinking fund with which to make an initial distribution to the bondholders after withholding an amount within the

discretion of GoldStar to cover future expenses, GoldStar may make such an initial distribution to proportionately reduce the initial face value of the Class A bonds. These bonds will be paid by the bondholders receiving from the sinking fund, on a semi-annual basis, their proportionate share of the amortized payments received by GoldStar from the Debtor, less the fees and expenses due to GoldStar under the Trust Indenture (defined Below). The rate of return of principal and interest to the bondholders for each year will be in accordance with the annual interest rate provided above. The monies distributed to the bondholders will be applied first to pay the outstanding (post-confirmation) interest due to the bondholders and then to reduce the principal balance of the bonds. The first payment to the bondholders is to be distributed by GoldStar by the 15th day of the sixth full month following the Plan Confirmation Date, and distributions will be made every six (6) months thereafter.

GoldStar will retain its lien on the Property as set forth in the Trust Indenture (Mortgage/Deed of Trust), dated April 2, 2006, recorded in the Official Public Records of Volusia County in Book 5804, Page 4655 (the "Trust Indenture"). Except as specifically modified by the Plan, the provisions of (a) the Trust Indenture, (b) the Prospectus, dated February 8, 2006, and (c) any other associated documents/agreements, between the Debtor, on one hand, and GoldStar or its predecessor in interest, on the other, shall remain in full force and effect, including but not limited to: (i) the provisions concerning the Trustee's discretionary, and other powers, lien rights, and rights to indemnification in the event of default or otherwise; (ii) the provisions concerning the use of a sinking fund account for the collection of the monthly payments from the Debtor, the payment of expenses and fees as authorized therein, and the payment to the Bondholders of the principal and interest collected; and (iii) the provisions concerning the Debtor's continuing obligation to maintain

insurance, and pay any property taxes due, on the Property. The provisions regarding the Debtor's monthly obligation to pay the fees and expenses of the Trustee and the Broker-Dealer shall remain an obligation in addition to the Debtor's monthly principal and interest payment obligation.

Should the Debtor default on its monthly payment obligation under the Plan and fail to cure the default for a period of sixty (60) days, then GoldStar may take action to collect the debt owed, including but not limited to, a state court foreclosure of the Property securing GoldStar's lien, as set forth in the Trust Indenture (Mortgage/Deed of Trust).

In addition, the Debtor shall not be allowed to re-file a bankruptcy for two (2) years following the Effective Date of the Plan as to re-impose the automatic stay to delay or preclude GoldStar or its assigns from foreclosing upon, repossessing, or selling any part of the Property under the terms of the Trust Indenture in the event of a default and failure to timely cure the default by the Debtor under the terms of the Plan, and this provision shall be binding in any other case filed under the Bankruptcy Code purporting to affect or include the Property during that time period. A certified copy of this Plan and the Order confirming this Plan may be recorded in the real estate records in Volusia County, Florida, in accordance with Florida state laws governing notices of interest and liens in real property, and when recorded shall serve notice of this restriction in any other Bankruptcy proceeding filed by the Debtor or purporting to affect or include, in rem, the Property during that 2 year period.

b. Class 2 - Wachovia Bank.

The Class 2 Claim consists of the Secured Claim of Wachovia Bank. The Class 2 Creditor is impaired and Wachovia Bank shall be allowed to vote to accept or reject the Plan as an Impaired Class. The Class 2 Claim shall be paid as follows: Wachovia's Claim, as of the

Petition Date, was $58,000.00. Debtor will make monthly payments in the amount of $300.00 per month at six percent (6%) interest from months one through sixty (1-60) with the balance due by a balloon payment on the sixty-first (61st) month after the Effective Date of the Plan. The initial monthly installments will begin on the first day of the full month after the Confirmation Order is executed, and each month thereafter with the balloon payment due on the 61st month after the Effective Date of the Plan to pay off the remaining balance of this Class 2 Claim.

3. Unsecured Claims - General Unsecured Claims.

There are no Unsecured Creditors and therefore no Unsecured Claims filed in this case.

C. Means of Implementation.

1. Business Operations and Cash Flow.

The Reorganized Debtor will continue to operate its business. The Debtor believes cash flow from the continued operation of the business will be sufficient to meet all required Plan Payments.

2. Funds Generated During Chapter 11.

Funds generated from operations until the Effective Date will be used for operational expenses and Plan Payments.

D. Other Provisions.

To the extent the Debtor rejects any executory contract or unexpired lease prior to the Confirmation Date, any party asserting a Claim, pursuant to Section 365 of the Code, arising from the rejection of an executory contract or lease shall file a proof of such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease, and any Allowed Claim resulting from

rejection shall be an Unsecured Claim except as otherwise provided herein. The Debtor shall have through and including the hearing on Confirmation within which to assume or reject any unexpired lease or executory contract; and, further, that in the event any such unexpired lease or executory contract is not assumed (or subject to a pending motion to assume) by such date, then such unexpired lease or executory contract shall be deemed rejected as of the Confirmation Date. The Plan also provides for the Bankruptcy Court to retain jurisdiction as to certain matters as stated in the Plan, including, without limitation, prosecution of all Causes of Action and objection to Claims.

## IV. CONFIRMATION

### A. Confirmation Hearing.

Section 1128 of the Code requires the Court, after notice, hold a Confirmation Hearing on the Plan at which time any party in interest may be heard in support of or in opposition to Confirmation. The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement to be made at the Confirmation Hearing. Any objection to Confirmation must be made in writing and filed with the Clerk, and delivered to the following persons, at least seven (7) days prior to the Confirmation Hearing:

Counsels for Debtor:

Robert J. Mara, Esquire
Mara & Mara, P.A.
555 West Granada Blvd., Unit B5
Ormond Beach, Florida 32174

Shimene Shepard-Ryan, Esquire
Law Office of Shimene Shepard-Ryan
3930 South Nova Road, Suite 304
Port Orange, Florida 32127

Shiloh Missionary Baptist Church, Inc./Debtor:

Nathaniel Brazill, Trustee
540 South Martin Luther King Boulevard
Daytona Beach, Florida 32114

United States Trustee

Attn: Timothy S. Laffredi, Esquire
135 West Central Boulevard, Suite 620
Orlando, Florida 32801

B. Confirmation Standards.

For a plan of reorganization to be confirmed the Code requires, among other things, that a plan be proposed in good faith and comply with the applicable provisions of Chapter 11 of the Code. Section 1129 of the Code also imposes requirements that at least one class of Impaired Claims accept a plan, that confirmation of a plan is not likely to be followed by the need for further financial reorganization, that a plan be in the best interest of creditors, and that a plan be fair and equitable with respect to each class of Claims or Interests which is Impaired under the plan.

The Bankruptcy Court shall confirm a plan only if it finds that all of the requirements enumerated in Section 1129 of the Code have been met. The Debtor believes that the Plan satisfies all of the requirements for Confirmation.

1. Best Interests Test.

Before the Plan may be confirmed, the Bankruptcy Court must find (with certain exceptions) that the Plan provides, with respect to each class, that each holder of an Allowed Claim or Interest of such Class either: (a) has accepted the Plan; or (b) will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor was, on the Effective Date, liquidated under Chapter 7 of the Code. The Debtor believes that both Classes of Secured

Claims will accept the Plan.

2. Financial Feasability.

The Code requires, as a condition to Confirmation, that Confirmation of a plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor unless the liquidation is proposed in the Plan. The Debtor believes that core operations will generate sufficient cash flow to make all Plan Payments as noted herein. The Debtor asserts that the Plan is feasible and Confirmation is not likely to be followed by further financial reorganization.

3. Acceptance by Impaired Classes.

The Code requires as a condition to Confirmation that each Class of Claims or Interests that is Impaired under the Plan accept such plan, with the exception described in the following section. A Class of Claims has accepted the Plan if the Plan has been accepted by Creditors that hold at least two-thirds (2/3) in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class who vote to accept or to reject the Plan.

A Class of Interests has accepted the Plan if the Plan has been accepted by holders of Interests that hold at least two-thirds (2/3) in amount of the Allowed Interests of such Class that vote to accept or reject the Plan. Holders of Claims or Interests who fail to vote are not counted as either accepting or rejecting the Plan.

A Class that is not Impaired under a Plan is deemed to have accepted such plan; solicitation of acceptances with respect to such Class is not required. A Class is impaired unless: (i) the legal, equitable, and contractual rights to which the Claim or Interest entitles the holder of such Claim or Interest are not modified; (ii) with respect to Secured Claims, the effect of any default is cured and the original terms of the obligation are reinstated; or (iii) the Plan provides that on the Effective Date

the holder of the Claim or Interest receives on account of such Claim or Interest, Cash equal to the Allowed Amount of such Claim or, with respect to any interest, any fixed liquidation preference to which the holder is entitled.

4. Confirmation Without Acceptance by all Impaired Classes; "Cramdown."

The Code contains provisions that enable the Court to confirm the Plan, even though all Impaired Classes have not accepted the Plan, provided that the Plan has been accepted by at least one Impaired Class of Claims. Section 1129(b)(1) of the Code states:

> "Notwithstanding Section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."

This section makes clear that the Plan may be confirmed, notwithstanding the failure of an Impaired Class to accept the Plan, so long as the Plan does not discriminate unfairly and it is fair and equitable with respect to each class of Claims that is Impaired under and has not accepted the Plan.

**THE DEBTOR BELIEVES THAT, IF NECESSARY, IT WILL BE ABLE TO MEET THE STATUTORY STANDARDS SET FORTH IN THE CODE WITH RESPECT TO NONCONSENSUAL CONFIRMATION OF THE PLAN AND WILL SEEK SUCH RELIEF.**

C. Consummation.

The Plan will be consummated and Payments made if the Plan is Confirmed pursuant to a Final Order of the Court and Plan Distributions commence. It will not be necessary for the Reorganized Debtor to await any required regulatory approvals from agencies or departments from the United States to consummate the Plan. The Plan will be implemented pursuant to its provisions

and the Code.

D. Effects of Confirmation.

1. Authority to Effectuate the Plan

Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides all matters provided under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Reorganized Debtor shall be authorized, without further application for an order of the Bankruptcy Court, to take whatever action is necessary to achieve consummation and carry out the Plan in accordance with this Plan and the Code.

2. Binding Effect of Confirmation

Confirmation of the Plan will legally bind the Debtor, all Creditors, Interest Holders, and other Parties in Interest to the provision of the Plan whether or not the Claim or Interest Holder is impaired under the Plan and whether or not such Creditor or Interest Holder voted to accept the Plan.

3. Discharge of Claims

To the fullest extent permitted by applicable law, and except as otherwise provided in the Plan, the operative documents implementing the Plan, or the Confirmation Order: (a) on the Effective Date the Confirmation Order shall operate as a discharge under 11 U.S.C. §1140(d)(1) of the Bankruptcy Code, and as a release of any and all Claims, Debts, Liens, Security Interests, and encumbrances of and against the Reorganized Debtor and all Property that arose before Confirmation, including without limitation, any Claim of a kind specified in §§ 502(g), 502(h), or 502(I) of the Bankruptcy Code, and all principle and interest, whether accrued before, on, or after the Petition Date, regardless of whether (i) a Proof of Claim has been filed or deemed filed, (ii) such

Claim has been Allowed pursuant to §502 of the Bankruptcy Code, or (iii) the Holder of such Claim has voted on the Plan or has voted to reject the Plan; and (b) from and after the Effective Date (i) all Holder of Claims shall be barred and enjoined from asserting against the Reorganized Debtor and its property any Claims, Debts, Liens, Security Interests, and encumbrances of and against all Property of the Estate and (ii) the Debtor shall be fully and finally discharged of any liability or obligation on a Disallowed Claim or an Interest. Except as otherwise specifically provided herein, nothing in the Plan shall be deemed to waive, limit, or restrict in any manner the discharge granted upon Confirmation of the Plan pursuant to §1141 of the Bankruptcy Code.

4. Judicial Determination of Discharge

As of the Confirmation Date, except as provided in the Plan, all Persons shall be precluded from asserting against the Debtor any other or further Claims, debts, rights, causes of action, liabilities or equity interests based on any act, omission, transaction, or other activity of any kind or nature that occurred before the Confirmation Date and the Confirmation Order shall be a judicial determination of discharge of all Claims against Debtor, pursuant to Sections 524 and 1141 of the Bankruptcy Code, and shall void any judgment obtained or entered against Debtor at any time to the extent the judgment relates to discharged Claims.

5. Injunction

As part of the Confirmation Order, the Bankruptcy Court shall permanently enjoin and prohibit all Holders of Claims, Liens, Security Interests, encumbrances, rights and Interest in, to, or against the Debtor or any of its assets from asserting, prosecuting or collecting such Claims, Liens, Security Interests (other than Liens or Security Interests expressly continued pursuant to the terms of the Plan or the operative documents between the Debtor and the Holder of a Claim

regarding the treatment of the Claim under the Plan, including the restructured debt to Goldstar Trust Company), encumbrances, rights and Interest against the Reorganized Debtor; provided, however, that such injunction shall not apply to any Claim asserted against the Debtor by a claimant based upon a default by the Debtor in performance of its obligations to the claimant under the Plan.

6. <u>Post-Confirmation Status Report</u>

The Bankruptcy court may schedule subsequent status conferences in its discretion.

## V. ALTERNATIVE TO THE PLAN

If the Plan is not confirmed and consummated, the Debtor believes that the most likely alternative is a liquidation of the Debtor under Chapter 7 or 11 of the Code. The Debtor believes that any liquidation is a much less attractive alternative to Creditors. Debtor believes that liquidation of all personal property in a Chapter 7 scenario would dramatically reduce the total amount available to Creditors. In a case under Chapter 7 of the Code, a trustee would be elected or appointed to liquidate the assets of the Debtor for distribution to Creditors in accordance with the priorities established by the Code.

## VI. CONCLUSION

The Debtor recommends that holders of Claims vote to accept the Plan.

DATED this 7th day of December, 2010.

Robert J. Mara, Esquire
Florida Bar No. 0073889
Mara & Mara, P.A.
555 West Granada Boulevard, Suite B5

Shimene Shepard-Ryan, Esquire
Florida Bar No. 0036488
Law Office of Shimene Shepard-Ryan
3930 South Nova Road, Suite 304

Ormond Beach, Florida 32174
Tel. (386) 672-8081
Fax (386) 265-5995
Email: rjmara@mara-maralaw.com

Port Orange, Florida 32127
Tel. (386) 761-7220
Fax (386) 761-7223
Email: sryan@lawyer.com